UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- X
                                      :
STEVEN GREENBAUM,                     :
                                      :
                        Plaintiff,    :
                                      :
            -v-                       :
                                      :    20cv771 (DLC)
NEW YORK CITY TRANSIT AUTHORITY,      :
METROPOLITAN TRANSPORTATION           :    OPINION &
AUTHORITY CORPORATION, and MANHATTAN  :    ORDER
AND BRONX SURFACE TRANSIT OPERATING   :
AUTHORITY,                            :
                                      :
                        Defendants.   :
                                      :
------------------------------------- X

APPEARANCES:

For the plaintiff:

Stewart Lee Karlin
Natalia Kapitonova
Stewart Lee Karlin Law Group, PC
111 John Street, 22nd Floor
New York, NY 10038

For the defendants:

Helene R. Hechtkopf
Miriam J. Manber
Hoguet Newman Regal & Kenney, LLP
One Grand Central Place
60 East 42nd Street, 48th Floor
New York, NY 10165

DENISE COTE, District Judge:

Steven Greenbaum ("Greenbaum"), a computer specialist with the Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), alleges that MaBSTOA, the New York City Transit Authority ("NYCTA") and the Metropolitan Transportation Authority Corporation ("MTA") (together with MaBSTOA and NYCTA, the "Defendants") discriminated against him on the basis of his disability when they terminated his employment in 2019. The parties have cross-moved for summary judgment. For the reasons stated below, the Defendants' motion for summary judgment is granted.

## Background

The following facts are undisputed or taken in the light most favorable to the plaintiff, unless otherwise noted. In 1999, MaBSTOA hired Greenbaum to work as a Computer Specialist in its Office of Management and Budget ("OMB"). Greenbaum's primary duties in his role as a Computer Specialist were to write, maintain, and run computer programs in order to generate financial reports for all of NYCTA's departments. Greenbaum also maintained the databases from which the information was drawn. His work required him to use several programming languages.

In May 2014, an old wrist injury flared up.[1]  At Greenbaum's request, an intern assisted him with the typing required to complete the task he was working on.  The record does not reflect that Greenbaum suffered any further problem with his wrist for another four years.

On June 19, 2018, Greenbaum suggested that OMB migrate one of its databases from the older Microsoft Access platform to a newer platform by Oracle and argued that it should be a "top priority."  Greenbaum's suggestion was accepted, and he worked on the project under the guidance of his coworker Jean-Raymond Theobal ("Theobal"), who had more experience with the Oracle platform.

On July 12, Greenbaum began to experience wrist pain again and asked Theobal to type for him, but Theobal refused.  At the time, Greenbaum reported to Lily Lee-Mahoney, the Unit Chief of Budget Analysis, who reported in turn to Roger Fisk ("Fisk"), Deputy Director of Budget.  Greenbaum continued to work but complained to Fisk about Theobal's refusal to help him with his typing.  Greenbaum also complained to coworkers and his supervisors about his wrist pain.

---

[1] In 1992, before his employment with MaBSTOA, Greenbaum received a Workers Compensation judgment that he was permanently 15% disabled due to an injury to his wrists sustained while working as a typist.

On July 19, Greenbaum asked Fisk to document his wrist pain for Worker's Compensation purposes as an injury on duty. On July 27, Greenbaum's managers offered him a form so that he could request an accommodation, but Greenbaum refused to take the form. At a meeting on August 1, Greenbaum explained to his managers and Craig Costa, a Director of Labor Relations from NYCTA, that he was experiencing mild pain when copying and pasting or typing a great deal. The managers again reminded Greenbaum that he could request a reasonable accommodation but would need to submit medical documentation to substantiate any such request. On August 2, Greenbaum requested an ergonomic keyboard. The keyboard was delivered on August 13, and on September 12, Greenbaum acknowledged that he had received it.

On August 9 and 14, Greenbaum visited Dr. Urania Ng ("Dr. Ng"). Dr. Ng restricted Greenbaum to a maximum of 90 minutes of typing or mouse usage per day. She predicted that Greenbaum's wrist flare-up would resolve itself after two or three months of rest.

On August 14, Greenbaum attempted to enlist a coworker to type for him while he dictated, but his managers asked him not to distract the co-worker. Later that day, a doctor at OMB's medical clinic evaluated Greenbaum and concurred with Dr. Ng's

assessment.  OMB's clinic placed Greenbaum on Restricted Work status with the same typing limitations.

Greenbaum submitted a reasonable accommodation form on August 15.  On that form, he listed "computer programming and systems development" and "running computer programs" as the essential functions of his job and requested "[v]oice activated software to control mouse and keyboard strokes and voice recognition and headset and training" as reasonable accommodations.  Attached to the form was a certification from Dr. Ng stating that he was restricted from typing or using a mouse for more than 90 minutes a day.  That same day, Greenbaum was placed on medical leave until he was fit to return to work.

On August 28, Greenbaum submitted additional medical records and on September 12, was again assessed by OMB's medical clinic as "restricted work temporary."  During September, the director of the agency's Medical Assessment Centers, Dr. Suzanne Lim ("Dr. Lim") reviewed Greenbaum's medical documentation.

Judith Buckley ("Buckley"), NYCTA's then-Deputy Chief ADA Compliance Officer, reviewed Greenbaum's request for voice-activated software.  On September 25, Buckley spoke with Dr. Lim and learned that an ultrasound showed Greenbaum to be suffering from tendonitis.

In October, Buckley asked Greenbaum what type of voice recognition software he was requesting so that it could be "evaluated for efficiency/accuracy for this job function." Greenbaum responded by asking what type of software MaBSTOA typically uses. On November 6, Greenbaum filed a complaint with the federal Equal Employment Opportunity Commission ("EEOC").

On December 12, Greenbaum submitted a prescription from his doctor that restricted him to 30 minutes of typing at a time, for a total of 4 hours per day. Later that afternoon, MaBSTOA changed Greenbaum's work status from Restricted Work "Temporary" to "Permanent."

Buckley informed Greenbaum on December 18 that an interactive process meeting would be held on January 3 and asked him to come prepared with a request for the specific voice recognition product that he wanted. Greenbaum did not have such a list at the meeting, but afterwards sent Buckley a list of software and equipment that he was requesting as a reasonable accommodation. The list included: Dragon Naturally Speaking software ("Dragon"), VoiceComputer software, additional random-access memory for his computer, and a microphone.

Dragon is voice recognition software that allows the user to dictate text and to use voice commands to perform simple computing functions. VoiceComputer is a program designed as an

add-on to Dragon.  It applies numbered "intags" over items displayed on the screen, allowing the user to use those numbers when speaking commands.  Intags can be automatically placed on the computer screen or can be inserted manually by using mouse clicks to identify each place on the screen where an intag should be placed.

Beginning in mid-January 2019, Buckley investigated whether Dragon would be suitable for Greenbaum's role.  Her notes include comments such as "What about down the road if Dragon Natural breaks?", "Can MTA IT support this?", "OMB says we cannot manage this solution that he's asking", "not used anywhere else in TA for programming", and "OMB doesn't have a support setting that could support this."

On March 1, Buckley proposed to her colleagues that OMB purchase Greenbaum's requested software so that he could test it at home.  In response, the MTA's IT department and Fisk expressed concern that Dragon and VoiceComputer had never been used within the MTA or any of its subsidiary agencies to perform Greenbaum's essential job functions.  Fisk characterized Greenbaum's request as "pioneering" and worried about the "significant upfront time investment" that would be required to train the software.  He noted that the time investment "is multiplied for each programming language, environment, and

package," and worried about the difficulty of "troubleshooting" the software across OMB's "entire ecosystem," especially given that OMB is "such a small group" and troubleshooting issues "would fall on Greenbaum's non-IT manager(s) to research and address . . . ." Although Dragon had been used by the MTA's Law Department in the past to dictate prose, the agency had never used it for computer programming. Fiske concluded with a request that IT "perform a formal assessment of whether or not this proposed accommodation is feasible to work for any IT function within MTA-IT." In April 2019, Buckley began exploring whether Greenbaum could instead be transferred to a comparable position that would require less typing.

At a meeting on May 6, Buckley and Fisk shared their concerns with Greenbaum. Just before a follow-up meeting on May 30 was scheduled to begin, Greenbaum circulated a ten-page document to address the concerns raised at the May 6 meeting. Greenbaum's document added a request for Toad software. Toad limits the amount of code that a user needs to manually write when building queries for maintaining a database. Greenbaum intended to use Dragon and VoiceComputer to make Toad's query-builder tool accessible by voice. Greenbaum claimed that he had tested Dragon and VoiceComputer on his laptop at home, and they had worked well with various work-related programs. The May 30

meeting was postponed to May 31.  The May 31 meeting focused on Greenbaum's document.

On August 30, 2019, after consulting with OMB, IT, Human Resources, Labor Relations, and the Law Department, Buckley denied Greenbaum's request for the software ("Denial Letter"). Buckley explained that the "small number" of employees at NYCTA who use Dragon do so only for "narrative-intensive work (such as dictation of letters or long memos), which is a different type of work input than computer programming."  She also expressed concern that Dragon and VoiceComputer would not be compatible with the many programs and programming languages that Greenbaum interfaced with, and that Greenbaum's limited testing of the software in the "controlled environment" of his home computer failed to demonstrate that he could "achieve the level of productivity and accuracy" demanded when working within OMB's complex computing environment.  Buckley explained that the introduction of the new software programs into OMB's computing environment would impose a "significant burden of providing technical support" for the software because OMB's employees lacked the "resident technical expertise" to troubleshoot and support the software on an ongoing basis.  She worried that these troubleshooting issues would become "yet another layer for potential critical failure, thereby rendering your programming

and maintenance contribution largely unavailable." Buckley concluded that the software "would represent an undue hardship within OMB," "particularly so given the specifics of the OMB unit: a small staff, many time-sensitive projects, and no resources within the unit (or within MTA IT) to troubleshoot the inevitable malfunctions." The letter ended by stating that "[a]s our interactive process has not yielded any alternative feasible accommodations, I must deny your request for an accommodation as a final determination."

In June and July 2019, Buckley had arranged two interviews for Greenbaum with other departments at the MTA, but neither department hired him. On August 19, Greenbaum was notified, pursuant to MaBSTOA policy, that his employment would be terminated if he was still on medical leave as of October 21. On October 7, Greenbaum filed for early retirement at the age of 56.

As noted above, on November 6, 2018, a little over two months after he submitted his request for a reasonable accommodation, Greenbaum filed a claim with the EEOC alleging that the MTA and NYCTA were discriminating against him on account of his disability.[2] Greenbaum did not name his employer

---

[2] The claim that Greenbaum submitted to the EEOC was much broader in scope than the dispute that is now before the Court. The EEOC claim alleged, for example, that the Defendants also

10

MaBSTOA in his EEOC complaint.[3]  On July 22, 2019, the EEOC
issued Greenbaum a Notice of Right to Sue.

On October 25, 2019, Greenbaum filed this action in the New
York County Supreme Court and filed an amended complaint on
November 7.[4]  On January 29, 2020, the Defendants removed the
action to federal court.  On May 22, Greenbaum filed a second
amended complaint.  Following the conclusion of discovery, the
parties filed cross-motions for summary judgment on February 5,
2021.  The motions became fully submitted on March 12.

---

refused to make reasonable accommodations for a prior back
injury that Greenbaum had suffered and discriminated against him
on the basis of his religion.

[3] Because the Defendants are entitled to summary judgment on the
merits of Greenbaum's claims, it is unnecessary to resolve the
Defendants' argument that Greenbaum failed to exhaust his
administrative remedies as to his ADA claim.

[4] To support his assertion that his ADA claim is timely,
Greenbaum alleges that he did not receive the Notice of Right to
Sue until July 29.  Greenbaum has submitted a scanned image of
the envelope with the date of its receipt written on it by hand.
Greenbaum did not produce the Notice in discovery, despite the
Defendants' request for it.

## Discussion

Summary judgment may not be granted unless all of the submissions taken together "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Smith v. Cty. of Suffolk, 776 F.3d 114, 121 (2d Cir. 2015) (citation omitted). "Where, as here, the party opposing summary judgment bears the burden of proof at trial, summary judgment should be granted if the moving party can point to an absence of evidence to support an essential element of the nonmoving party's claim." Gemmink v. Jay Peak Inc., 807 F.3d 46, 48 (2d Cir. 2015) (citation omitted). In making this determination, a court must "draw[] all inferences in favor of the nonmoving party." Id.

Once the moving party has asserted facts demonstrating that the non-movant's claims cannot be sustained, the opposing party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Id. "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth

12

specific facts demonstrating that there is a genuine issue for trial." Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009) (citation omitted). "[C]onclusory statements, conjecture, and inadmissible evidence are insufficient to defeat summary judgment." Ridinger v. Dow Jones & Co. Inc., 651 F.3d 309, 317 (2d Cir. 2011) (citation omitted). Only disputes over material facts preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

The plaintiff brings claims under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") alleging that the three Defendants each discriminated against him on the basis of his disability, refused to engage in an interactive process with him, and subjected him to a hostile work environment on account of his disability.[5] It is undisputed that Greenbaum was employed by MaBSTOA. Greenbaum asserts that the NYCTA and MTA are properly named as defendants as his joint employers. Because the Defendants are entitled to summary

---

[5] Greenbaum has abandoned seven other claims.

13

judgment on the merits of Greenbaum's claims, it is unnecessary to further address whether Greenbaum has properly invoked the joint employer doctrine.

I.   Discrimination

The Defendants move for summary judgment on the claim that they discriminated against Greenbaum in violation of the ADA, NYSHRL, and NYCHRL.  They assert that Greenbaum is not disabled as defined under the ADA and that, in any event, the Defendants did not refuse to provide Greenbaum with a reasonable accommodation for his wrist injury and did not subject him to any disparate treatment.

A.   ADA

Greenbaum suffers from wrist tendonitis, which prevents him from typing and clicking for more than four hours a day.  This does not constitute a disability under the ADA.

The ADA defines disability as "a physical or mental impairment that substantially limits one or more" of an individual's "major life activities."  42 U.S.C. § 12102(1).  It adds that the definition of disability "shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."  Id. § 12102(4).  The ADA includes "working" under its definition of major life activities.  Id. § 12102(2).

"[A]n employee's inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." Woolf v. Strada, 949 F.3d 89, 94 (2d Cir. 2020) (citation omitted). This principle "recognizes that employees who are precluded only from doing their specific job[] . . . do not have a 'disability.'" Id. Rather, "an employee alleging a substantial limitation in the major life activity of working must show that the limitation affects the ability to perform a class or broad range of jobs." Id. at 95 (citation omitted). See, e.g., Sutton v. United Air Lines, 527 U.S. 471, 493 (1999) (global airline pilot is not a class of jobs); Booth v. Nissan N. Am., Inc., 927 F.3d 387, 394 (6th Cir. 2019) (providing "assembly line jobs" as an example of a class of jobs); Widomski v. State Univ. of N.Y., 748 F.3d 471, 475-76 (2d Cir. 2014) (medical technician is not a class of jobs); Bartlett v. N.Y. State Bd. of Law Exam'rs, 226 F.3d 69, 84 (2d Cir. 2000) (the practice of law is a class of jobs); Muller v. Costello, 187 F.3d 298, 313 (2d Cir. 1999) (a correctional officer is not a class of jobs).

Greenbaum's tendonitis prevented him from typing or clicking with a mouse more than four hours a day. While Greenbaum has shown that this was a permanent impairment, he has not shown that the impairment has interfered with either the

15

major life activity of working or working in a broad class of jobs.

Greenbaum contends that he suffers from not only wrist tendonitis but also carpal tunnel syndrome and has offered printouts from online articles describing those conditions.[6] He contends that his permanent disability prevents him "from doing substantial things in his life such as working." Greenbaum has not presented any admissible evidence that he suffers from carpal tunnel syndrome and has not offered evidence to raise a question of fact that his tendonitis prevents him from working in a broad class of jobs. Therefore, his ADA claims are denied.

B.   NYSHRL

Greenbaum asserts that the Defendants failed to provide him with a reasonable accommodation for his disability due to wrist tendonitis in violation of the NYSHRL. The Defendants do not dispute that Greenbaum is disabled as defined under the NYSHRL.[7] They dispute, however, that they failed to provide a reasonable

---

[6] Greenbaum relies on screenshots of online articles from WebMD, Medical NewsToday, and the Mayo Clinic that describe some of the symptoms of tendonitis and carpal tunnel syndrome.

[7] The NYSHRL defines disability as "a physical . . . impairment . . . which prevents the exercise of a normal bodily function." Spiegel v. Schulmann, 604 F.3d 72, 80 (2d Cir. 2010) (quoting N.Y. Exec. Law § 292(21)). This definition "is broader than that contained in the ADA." Davis v. Bowes, 159 F.3d 1346 (2d Cir. 1998).

accommodation to Greenbaum.  They contend that the adoption of

his request for three complex software products that would have

to work interactively would have imposed undue hardship on

MaBSTOA.

A claim that an employer has failed to provide a reasonable

accommodation under the NYSHRL "is governed by the same legal

standards as govern federal ADA claims."  Noll v. Int'l Bus.

Machines Corp., 787 F.3d 89, 94 (2d Cir. 2015) (citation

omitted).  Reasonable accommodations are "[m]odificiations or

adjustments" that "enable" an employee with a disability to,

inter alia, "perform the essential functions of [his] position."

29 C.F.R. § 1630.2(o)(1)(ii).

The first step in a failure-to-accommodate claim is to

determine the "essential functions" of the plaintiff's position.

See McMillan v. City of New York, 711 F.3d 120, 126-27 (2d Cir.

2013).  The term "essential functions" means "the fundamental

job duties of the employment position the individual with a

disability holds or desires" but "does not include the marginal

functions of the position."  29 C.F.R. § 1630.2.  There are "a

number of relevant factors that may influence a court's ultimate

conclusion as to a position's essential functions."  McMillan,

711 F.3d at 126.  "Evidence of whether a particular job duty

constitutes an essential function includes, inter alia, 'the

employer's judgment as to what functions of a job are essential'
. . . ." McBride v. BIC Consumer Prod. Mfg. Co., 583 F.3d 92,
98 (2d Cir. 2009) (quoting 42 U.S.C. § 12111(8)); see also
McMillan, 711 F.3d at 126 (listing other "relevant factors").  A
court must give "considerable deference" to an employer's
determination regarding what functions of the employee's job are
"essential."  Id.

"After the essential functions of the position are
determined, the plaintiff must demonstrate that he or she could
have performed these functions, with or without reasonable
accommodation, at the time of the termination."  Id. at 127.
"Once a plaintiff suggests plausible accommodations, the burden
of proof shifts to the defendant to demonstrate that such
accommodations would present undue hardships and would therefore
be unreasonable."  Bey v. City of New York, No. 20-456, 2021 WL
2345249, at *5 (2d Cir. June 9, 2021) (citation omitted).

"An 'undue hardship' is 'an action requiring significant
difficulty or expense.'"  McMillan, 711 F.3d at 128 (quoting 42
U.S.C. § 12111(10)(A)).  In addition to the cost of purchasing
any proposed accommodation, courts consider the following
factors in determining whether an accommodation would impose an
undue hardship on an employer:

> (iv) The type of operation or operations of the
> [employer], including the composition, structure and

functions of the workforce of such entity, and the
geographic separateness and administrative or fiscal
relationship of the facility or facilities in question
to the [employer]; and

(v) The impact of the accommodation upon the operation
of the facility, including the impact on the ability
of other employees to perform their duties and the
impact on the facility's ability to conduct business.

29 C.F.R. § 1630.2(p)(2); see also 42 U.S.C. § 12111(10)(B).

The essential functions of Greenbaum's job were "computer
programming and systems development" and "running computer
programs." Greenbaum identified these duties as the essential
functions of his job on his August 15, 2018 reasonable
accommodation form. These tasks required extensive typing and
clicking with a mouse.[8]

In this lawsuit, Greenbaum claims that he could have
performed these essential functions if MaBSTOA had accommodated
his wrist tendonitis by installing Dragon, VoiceComputer, and
Toad on his computer. These three programs, he alleges, would
have allowed him to perform his duties with a minimal amount of
typing. It will be assumed that Greenbaum has met his burden to

---

[8] In opposing the Defendants' motion, Greenbaum admits that his
job duties included writing code, but asserts that he "very
seldom" did so. This assertion does not raise a question of
fact that it was an essential function of Greenbaum's work at
MaBSTOA to write code. Greenbaum himself identified computer
programming as one of his essential job functions and engaged
for months with his employer about accommodations that might
permit him to do that task without typing or clicking.

demonstrate that he could have performed the essential functions of his job when he allegedly tested Dragon, VoiceComputer, and Toad at home on his personal laptop.

The Defendants have carried their burden to show that the adoption of Greenbaum's proposed accommodation would have imposed an undue hardship on MaBSTOA. The Denial Letter was the result of a months-long process. It explained that MaBSTOA had investigated Greenbaum's proposal and concluded that it was not feasible. The three reasons that the Denial Letter provided -- no employee had ever used Dragon for complex tasks like computer programming, the proposed programs may not perform well in OMB's computing environment, and OMB's small staff would struggle to maintain and troubleshoot the software on an ongoing basis -- constitute a compelling showing of undue hardship.

Greenbaum has not offered evidence to raise a question of fact as to any of the three reasons provided in the Denial Letter. He has not shown that MaBSTOA, or indeed anyone in NYCTA and its divisions, had ever used Dragon for programming, that the constellation of programs he identified would work in the OMB environment, or that OMB's employees would not be challenged in supporting his proposal. OMB was a small department, as was the IT department. Installing, managing and supporting the three programs, which were novel in that

environment, making sure that they worked well with each other and with each of the MaBSTOA systems on which Greenbaum was supposed to work, would have "require[ed] significant difficulty or expense" given OMB's limited resources. 42 U.S.C. § 12111(10)(A).

In opposing this motion, Greenbaum essentially concedes that the Defendants have carried their burden to show that his proposal would have caused undue hardship. Greenbaum argues instead that the Defendants have failed to prove the existence of undue hardship because they never purchased, installed, and allowed him to test the software solutions at work. There is no requirement, however, that a defendant show undue hardship by adopting and implementing the accommodation to demonstrate the burden. Cf. Henrietta D. v. Bloomberg, 331 F.3d 261, 281 (2d Cir. 2003) ("[A] defendant will not be required to adopt an accommodation if it successfully demonstrates that the proposed accommodation . . . would cause it to suffer an undue hardship."). Accordingly, Greenbaum's NYSHRL accommodation claim is denied.

C.    NYCHRL

Greenbaum brings two discrimination claims against the Defendants under the NYCHRL. First, he asserts that the Defendants failed to provide him with a reasonable accommodation

for his disability due to wrist tendonitis.  Second, he alleges that the Defendants subjected him to disparate treatment on account of his disability.  The Defendants do not dispute that Greenbaum is disabled for purposes of the NYCHRL.[9]  They dispute, however, that they failed to provide a reasonable accommodation to Greenbaum or subjected him to any disparate treatment.

### 1.  Reasonable Accommodation

The NYCHRL requires that an employer "provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job . . . ."  N.Y.C. Admin. Code § 8-107(15)(a).  "The term 'reasonable accommodation' means such accommodation that can be made that does not cause undue hardship in the conduct of the [employer's] business.  The [employer] has the burden of proving undue hardship."  Id. § 8-102.

For the reasons just explained, the Defendants have met their burden of proving that they would have suffered undue hardship if they had adopted Greenbaum's proposed accommodation.

---

[9] The NYCHRL "defines 'disability' as 'any physical . . . impairment,' which is then defined, in relevant part, as "an impairment of any system of the body; including, but not limited to . . . the musculoskeletal system."  Spiegel v. Schulmann, 604 F.3d 72, 82 (2d Cir. 2010) (citation omitted) (quoting N.Y. City Admin. Code §§ 8-102(16)(a), (b)(1)).  "This definition of disability is, on its face, broader than that provided by the NYSHRL."  Id.

Greenbaum having failed to raise a question of fact in this regard, his NYCHRL failure-to-accommodate claim is denied.

2.    Disparate Treatment

The Defendants move for summary judgment on Greenbaum's disparate treatment claim on the ground that Greenbaum has failed to identify any similarly situated individual.  To prevail on a disparate treatment claim under the NYCHRL, a plaintiff "need only show differential treatment -- that [he] is treated 'less well' -- because of a discriminatory intent." Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013).[10]

"A showing of disparate treatment -- that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside his protected group -- is a recognized method of raising an inference of discrimination for the purposes of making out a prima facie case."  Ruiz v. Cty. of Rockland, 609 F.3d 486, 493 (2d Cir. 2010) (citation omitted)

---

[10] The Court of Appeals explained in Mihalik that

> While it is unclear whether McDonnell Douglas continues to apply to NYCHRL claims and, if so, to what extent it applies, the question is also less important because the NYCHRL simplified the discrimination inquiry: the plaintiff need only show that her employer treated her less well, at least in part for a discriminatory reason.

Mihalik, 715 F.3d at 110 n.8.

(Title VII disparate treatment claim); see also Brown v. Daikin
Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (same). "An employee
is similarly situated to co-employees if they were (1) subject
to the same performance evaluation and discipline standards and
(2) engaged in comparable conduct." Ruiz, 609 F.3d at 494
(citation omitted). "The standard for comparing conduct
requires a reasonably close resemblance of the facts and
circumstances of plaintiff's and comparator's cases, rather than
a showing that both cases are identical." Id. (citation
omitted). "In other words, the comparator must be similarly
situated to the plaintiff in all material respects." Id.
(citation omitted)

     In opposing the Defendants' motion, Greenbaum identifies as
the relevant comparator for his disparate treatment claim a
supervisor, Linda Lam ("Lam"), who was permitted to work part-
time while recovering from cancer. Lam is not similarly
situated to him. Greenbaum was employed as a computer
specialist, while Lam occupied a managerial role. Greenbaum was
permanently disabled by wrist tendonitis; Lam was recovering
from cancer. Having failed to identify an adequate comparator,
Greenbaum's disparate treatment claim under the NYCHRL fails.

II.  Interactive Process

Greenbaum asserts that the Defendants failed to engage in an interactive process with him in violation of the ADA, NYSHRL, and NYCHRL.  The Defendants move for summary judgment on each of these claims as well.

A.  ADA and NYSHRL

The failure to engage in an interactive process does not form the basis of an ADA claim "in the absence of evidence that accommodation was possible."  Sheng v. M&TBank Corp., 848 F.3d 78, 86-87 (2d Cir. 2017) (citation omitted).  "Therefore, there is no valid independent claim under the ADA for failure to engage in an interactive process."  Id.  Similarly, no such cause of action exists under the NYSHRL.  See Jacobsen v. New York City Health & Hosps. Corp., 22 N.Y.3d 824, 838 (2014).  Greenbaum's interactive process claims under the ADA and NYSHRL are denied.

B.  NYCHRL

The refusal to engage in a good faith interactive process is independently actionable under the NYCHRL.  Hosking v. Mem'l Sloan-Kettering Cancer Ctr., 186 A.D.3d 58, 64 (N.Y. App. Div. 1st Dep't 2020).  The NYCHRL provides:

> It shall be an unlawful discriminatory practice for an
> employer[] . . . to refuse or otherwise fail to engage
> in a cooperative dialogue within a reasonable time
> with a person who has requested an accommodation or

who the [employer] has notice may require such an
accommodation[] . . . [r]elated to a disability.

N.Y.C. Admin. Code § 8-107(28)(a).

Greenbaum's managers worked closely with him to search for
a reasonable accommodation.  These discussions began immediately
after Greenbaum reported his wrist problems in the summer of
2018.  Greenbaum's supervisors initiated the dialogue by
offering him the appropriate form, delivered him the requested
ergonomic keyboard, considered his doctor's diagnosis, conducted
their own medical examination, invited him to propose solutions,
and met with him.  It was only after a meeting in January 2019
that Greenbaum identified two software solutions.  In May of
2019, Greenbaum identified a third piece of software and
delivered a ten-page defense of his proposal.  In August of
2019, MaBTSOA issued the Denial Letter.  Given the complexity of
the proposed accommodation and Greenbaum's own delays in
presenting his requests, the Defendants have shown that MaBSTOA
actively and diligently engaged with Greenbaum regarding his
request for an accommodation.

Greenbaum has not offered evidence to raise a question of
fact regarding MaBSTOA's efforts in working with him to find a
reasonable accommodation for his wrist tendonitis.  In opposing
the Defendants' motion, Greenbaum claims that the Defendants
waited nine months "to express any concerns" about his proposed

accommodation.[11]  This misconstrues the undisputed evidence.  It is true that Greenbaum identified two software programs in January 2019 and that MaBSTOA denied his request for the accommodation in August, but in the interim, MaBSTOA explained its concerns about those two programs, and in May, Greenbaum submitted a ten-page document responding to those expressed concerns and identified a third software program.  Thus, MaBSTOA was required to expend additional time to analyze Greenbaum's ten-page document and modified solution.  Greenbaum does not assert that the time expended between May and August to reach a final decision was unreasonably long, nor could he.

Next, Greenbaum complains that MaBSTOA never responded to his request to allow him to test the three software programs in the office.  But this assertion fails to raise a material issue of fact.  There is no legal requirement that a defendant experiment with a proposed accommodation that it has determined would cause it undue hardship to implement, particularly when the experiment would affect the employer's computing environment.

---

[11] Greenbaum does not explain which nine-month period he is referring to, but it appears to be the period between January and August 2019.  He refers to paragraph 17 of his declaration, but that paragraph does not explain which nine-month period he is referring to either.

Finally, Greenbaum contends that MaBSTOA failed its obligation to engage in an interactive process when it failed to retain outside experts to review Greenbaum's proposed accommodation. Greenbaum acknowledges that MaBSTOA consulted with the experts on its own staff. MaBSTOA had no obligation under the law generally or in the circumstances presented by Greenbaum's request, to retain outside experts. Its own staff was in a good position to evaluate the risks and burdens of integrating three new software programs into the MaBSTOA IT environment to accommodate an employee performing the essential functions of Greenbaum's job, and Greenbaum has not offered evidence to raise a question of fact in this regard. Accordingly, Greenbaum's interactive process claim under the NYCHRL is denied.

III. Hostile Work Environment

Finally, Greenbaum asserts that he was subjected to a hostile work environment because of his disability in violation of the ADA and NYCHRL. The Defendants move for summary judgment on each of these claims.

A.    ADA

To establish a hostile work environment claim under the ADA, a plaintiff must show "(1) that the harassment was sufficiently severe or pervasive to alter the conditions of his

employment and create an abusive working environment, and (2) that a specific basis exists for imputing the objectionable conduct to the employer." <u>Fox v. Costco Wholesale Corp.</u>, 918 F.3d 65, 74 (2d Cir. 2019) (citation omitted). "Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." <u>Id.</u> (citation omitted). "Even an isolated act may be so serious that it requires the conclusion that the terms and conditions of employment were altered." <u>Id.</u> "A plaintiff alleging a hostile work environment claim under the ADA, therefore, must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." <u>Id.</u>

In his brief in opposition to the Defendants' motion for summary judgment, Greenbaum refers essentially to three circumstances that he asserts created a hostile work environment.[12] For two of these circumstances, Greenbaum's memorandum in opposition to the Defendants' motion for summary judgment and his 56.1 counterstatement contain no citation to

---

[12] Greenbaum characterizes his claim that MaBSTOA failed to engage in the interactive process as a hostile work environment claim as well. As explained above, that claim is without merit.

any part of the record to suggest that there is admissible evidence in support of these assertions. In any event, none of these three circumstances constitutes either a "serious" incident or a pattern of conduct that altered the conditions of Greenbaum's employment in a material way.

First, Greenbaum argues that the Defendants changed his job assignments to try to make him "copy and paste" so that he would have "pain and hopefully quit." Greenbaum complains as well that Fisk did not inform him how to perform the assignment in a way that would avoid the copying and pasting. Greenbaum is apparently referring to an assignment given to him in early August of 2018 that required seven hours' worth of copying and pasting to be done over the five-day period before Greenbaum left on vacation. This was work for the migration of the database which Greenbaum had begun in June of 2018 and had not yet completed.

This August assignment does not constitute the creation of a hostile work environment for at least three reasons. First, it was Greenbaum who had advocated in June of 2018 that OMB migrate the database to Oracle, a task which he asserted was a top priority. Second, Greenbaum was given five days to complete the seven hours of work of which he complains. Third, Greenbaum has offered no evidence that Fisk had any superior understanding

of how to accomplish the migration that he withheld from Greenbaum or that anyone was acting with a motive other than to complete the migration.  Therefore, this single assignment does not, as a matter of law, constitute either the "severe" or "pervasive" employer misconduct that the law contemplates.

Second, Greenbaum claims that he was subjected to a hostile work environment when he was sent to "bogus interviews" in departments with no vacancies available for him.  This effort to assist Greenbaum to find another position with the Defendants, whether effective or not, does not constitute an alteration in the conditions of his employment.

Finally, Greenbaum argues that the Defendants created a hostile work environment when they failed to provide him with the ergonomic keyboard that he requested.  If this failure had existed, it might constitute a failure to accommodate a disability; it would not constitute a hostile work environment. In any event, Greenbaum is mistaken.  The evidence presented with this motion for summary judgment reveals that the keyboard arrived on August 13, 2018 and Greenbaum acknowledged its receipt on September 12.

In sum, Greenbaum has offered no evidence to create an issue of fact that the Defendants subjected him to a hostile

work environment.  Greenbaum's hostile work environment claim
under the ADA is therefore dismissed.

     B.   NYCHRL

The standard for hostile work environment liability under
the NYCHRL is more permissive than that under the ADA.  A
plaintiff need not show that the hostile conduct was severe and
pervasive.  Rather, a plaintiff need only demonstrate by a
preponderance of the evidence that he was treated less well than
other employees because of his disability.  <u>Mihalik</u>, 715 F.3d at
110; <u>Williams v. New York City Hous. Auth.</u>, 61 A.D.3d 62, 78
(N.Y. App. Div. 1st Dep't 2009).

Even under this more lenient standard, the Defendants are
entitled to summary judgment.  As discussed above, Greenbaum has
neither identified nor produced any evidence that he was treated
less well than a colleague because of his wrist injury.
Greenbaum's hostile work environment claim under the NYCHRL is
dismissed.

## Conclusion

The Defendants' February 5, 2021 motion for summary judgment is granted; the plaintiff's motion is denied. The Clerk of Court shall enter judgment for the Defendants and close the case.

Dated:   New York, New York
         June 25, 2021

                                    _____
                                        DENISE COTE
                              United States District Judge